J-S25038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.R., MOTHER | : | No. 44 MDA 2019 |

Appeal from the Decree Entered December 5, 2018
in the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  79 AD 2018

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.A.V., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.R., MOTHER | : | No. 45 MDA 2019 |

Appeal from the Decree Entered December 5, 2018
in the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  78 AD 2018

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 20, 2019**

D.R. ("Mother") appeals from the Decrees granting the Petitions filed by D.B.R. and H.N.R. ("Adoptive Father" and "Adoptive Mother", collectively, the "Adoptive Parents"), and terminating Mother's parental rights to her son, N.A.V., Jr., (born in January 2009), and her daughter, S.S.V. (born in October 2011), (collectively, "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1),

(2), and (b).[1] Mother's counsel, Natalie Ryan Burston, Esquire ("Counsel"), has filed with this Court a Motion to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We grant Counsel's Motion, and affirm the Decrees entered by the trial court.

The trial court summarized the relevant history underlying the instant appeals as follows:

> The [C]hildren … currently reside with [the Adoptive Parents]. This living arrangement was the result of an intervention by Children and Youth [Services of Dauphin County ("CYS")] in which [Mother] agreed to sign over temporary physical and legal custody rights to the [A]doptive [P]arents on November 14, 2017. This was the result of [Mother and Father] suffering from drug addictions. [Mother and Father] had tested positive for cocaine and THC. After the [A]doptive [P]arents took control of the [C]hildren, [CYS] closed their investigation. Since the signing of that agreement, the [C]hildren have remained with the [A]doptive [P]arents. It is important to note that the [A]doptive [P]arents and [Mother] are related. The [A]doptive [F]ather is the [C]hildren's uncle and [Mother's] brother.
>
> Prior to living with the [A]doptive [P]arents, the [C]hildren spent approximately two years in a foster home. When the [C]hildren came into the care of the [A]doptive [P]arents, they had a difficult time adjusting. The [C]hildren lacked the ability to care for themselves and suffered from physical and emotional issues. Specifically, the [C]hildren did not understand what it meant to be in a "forever home" because of how often they had been moved around. Additionally, the [C]hildren had issues with lying and overeating.
>
> After the [C]hildren were placed with the [A]doptive [P]arents, they were taken to therapy and made great strides with

_____

[1] The trial court also terminated the parental rights of the Children's father, N.V.O. ("Father"). Father has not filed an appeal from the termination of his parental rights, nor is Father a party to the instant appeal.

their physical and emotional problems. Now, they are excelling in school and learning coping mechanisms. At the time of the termination hearing, the [C]hildren had lived with the [A]doptive [Parents] for approximately one year. During that year, [Mother] only visited with [the Children] twice[,] and there was no further contact. The [A]doptive [P]arents made attempts to reach out to [Mother], but they had no phone numbers that worked, and their Facebook messages were left unanswered.

However, [Mother] did testify that she spent three (3) months in rehabilitation, three (3) months in a halfway house and time in a recovery house immediately preceding the termination hearing. During her testimony, [Mother] admitted that her current housing is not suitable for [the Children,] and that she may not be what is best for them. More importantly, she admitted to not having contact with [the Children] for at least a year.

Currently, [Mother] is employed as a housekeeper at the Comfort Inn. [A]doptive [M]other is a part[-]time hair stylist and spends … much of her time at home with [the Children]. [A]doptive [F]ather is self[-]employed as a mechanic and is also employed through a garage. The [A]doptive [P]arents have been married for approximately two years. Testimony by the Guardian *ad Litem* ("GAL") indicated that the [C]hildren's needs were being met[,] and that they wanted to stay with the [A]doptive [P]arents. Ultimately, [the GAL] recommended that an adoption would be in the best interests of the [C]hildren.

Trial Court Opinion, 2/4/19, at 1-3 (footnote and citations to record omitted; paragraph breaks added).

On December 5, 2018, following a hearing, the trial court entered the Decrees terminating Mother's and Father's parental rights to the Children. On January 2, 2019, Mother filed her Notices of Appeal from the termination Decrees.[2] Counsel included a statement in the Notices of Appeal indicating

_____

[2] On February 8, 2019, this Court, acting *sua sponte*, consolidated Mother's separate Notices of Appeal for the Children.

her intent to file a Motion to withdraw as counsel pursuant to Pa.R.A.P. 1925(c)(4), in lieu of filing concise statements of errors complained of on appeal.

On March 11, 2019, Mother's counsel filed with this Court a Motion to withdraw as counsel. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237. In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he or she must

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record …, counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal…; and
>
> (3) furnish a copy of the brief to [the client] and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief

> (1)    provide a summary of the procedural history and facts, with citations to the record;

> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Counsel has complied with each of the requirements of *Anders*. Counsel indicates that she conscientiously examined the record and determined that the appeal on behalf of Mother would have no meritorious issues, and therefore, is wholly frivolous. Further, Counsel's *Anders* brief comports with the requirements set forth by our Supreme Court in *Santiago*. Finally, attached to her Motion to withdraw is a copy of Counsel's letter to Mother. In compliance with *Millisock*, the letter states Counsel's intention to

- 5 -

seek permission to withdraw, and advises Mother of her right to retain private counsel to represent her on appeal or to file a *pro se* brief on her own behalf to raise any additional issues she deems worthy of appellate review. Accordingly, Counsel has complied with the procedural requirements for withdrawing from representation, and we will review the merits of Mother's appeal.

In the **Anders** brief, Counsel raises the following issue:

I. Did the trial court abuse its discretion, or commit an error of law by determining it was in the [C]hildren's best interest to have Mother's parental rights terminated by clear and convincing evidence?

**Anders** Brief at 7 (footnote omitted).

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed in **R.J.T.**, [9 A.3d 1179, 1190 (Pa. 2010),] there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and

termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subsection] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subsection] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This Court may affirm the

trial court's decision regarding the termination of parental rights with regard

to any one subsection of section 2511(a), along with consideration of Section

2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, we will consider subsections 2511(a)(2) and (b),[3] which provide

as follows:

**§ 2511. Grounds for involuntary termination**

---

[3] We note that although Mother only challenges the trial court's Decrees under subsection 2511(b), we will address subsection 2511(a) as a part of our independent review.

- 7 -

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(a)(2), (b).

The Supreme Court set forth the appropriate inquiry under Section 2511(a)(2) as follows:

[Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. …

This Court has addressed incapacity sufficient for termination under [Section] 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can

seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d at 827 (quotation marks, brackets, and citations omitted).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted; brackets omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through

- 9 -

the emotional wreckage and completely disavow a parent. … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and quotation marks omitted).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

With regard to section 2511(a)(2) and (b), the trial court stated as follows:

> In the present case, this [c]ourt believes that based on the testimony presented by both parties, there was sufficient evidence to warrant the termination of [Mother's] parental rights. … First, we find it important to note … that two years prior to the [C]hildren living with their [A]doptive [P]arents, they were in foster care because [Mother] was unable to care for them. (N.T., 25-26). Secondly, on November 14, 2017, [CYS] intervened by removing the [C]hildren from [Mother's] care; [*sic*] again, because [Mother] was not capable of taking proper care of them. (N.T., 7). Since [CYS's] intervention, the [C]hildren have remained in the care of [Mother's] brother and sister-in-law, the [A]doptive [P]arents. The testimony indicated that the last time [Mother] had seen [C]hildren was November 21, 2017. Essentially, [Mother] has failed to partake in [C]hildren's lives and has failed to perform her parental duties for approximately three years. As a result,

- 10 -

[C]hildren have suffered trauma. (N.T., 27). Testimony was presented that the [C]hildren lacked the ability to care for themselves and suffered from emotional and physical problems. (N.T., 7, 27). More specifically, the [C]hildren had issues with lying and overeating. (N.T., 27).

The [GAL] described the [C]hildren as not understanding what a "forever home" meant because they have been moved around so much. [(N.T., 27)]. Due to the [A]doptive [P]arents' efforts, the [C]hildren have been placed in therapy and are making great strides physically, emotionally, and in their education. (N.T., 9). Finally, it was made clear to this [c]ourt that [Mother] suffers from a heroin addiction, and that she does not currently possess the ability to properly care for [C]hildren. (N.T., 23). She admitted to this [c]ourt that she has been in rehab and at least two recovery houses for the past year, and does not have housing that would be suitable for the [C]hildren to live in. (N.T., 22-23). Additionally, a drug and alcohol evaluation presented to this [c]ourt recommended that [Mother] partake in intensive outpatient care. (N.T., 27). We believed that terminating [Mother's] parental rights was in the [C]hildren's best interests[,] [a]s it has been approximately a three-year time span that [Mother] has been unable to take the appropriate steps to adequately provide for [the C]hildren. This is evidenced by the fact that the [C]hildren spent two years in foster care and the past year with their [A]doptive [P]arents.

Another factor that courts can consider pursuant to § 2511(a)(2), [*sic*] is repeated and continued incapacity of a parent that has caused a child to be without essential parental care, control, or subsistence necessary for their physical and mental well-being. Again, we would repeat that [Mother] has left [the C]hildren's lives in disarray by her inability to take care of herself. It was clearly presented to this [c]ourt that the [C]hildren have suffered mental, physical, and emotional problems from never having a permanent home until living with the [A]doptive [P]arents. [Mother's] continued inability to provide for [the C]hildren is concerning to this [c]ourt, and we do not see it being remedied in the near future. We will not subject innocent children to the conditions they were previously living in, especially when they now have a stable, loving, and permanent home. Therefore, we believe that this factor has also been satisfied.

As it stands now, we do not see a change in the conditions that led to the [C]hildren's removal. [Mother] is still in need of intensive care for her addiction and she has not acquired adequate housing. Most importantly, we do not believe [Mother] has taken all the steps that she can to better herself and her situation. [Mother] herself even stated that the [C]hildren are in the best place that they can be, and this [c]ourt must agree. (N.T., 25). As a result, [Mother's] parental rights were terminated because it was what was in the best interest of the [C]hildren.

It is also important to note that [Mother] refused to agree to an Act 101 Agreement, even after extensive discussions with her attorney regarding such an agreement. (N.T., 29). Thus, we believe that granting the termination of her parental rights was the best alternative. As this [c]ourt stated at the hearing, the decision as to whether [Mother] will be permitted to see [the C]hildren in the future is left to the [A]doptive [P]arent's discretion. [(N.T., 29-30)]. We believe that the [C]hildren are finally in a stable home environment and that is ultimately the reason for terminating [Mother's] parental rights.

Trial Court Opinion, 2/4/19, at 4-6 (paragraph breaks added).

Although Mother claims that she loves the Children, **see** N.T., 12/5/18, at 22, this Court has held that a parent's love of her child, alone, does not preclude a termination. **See In re L.M.**, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." **In re Adoption of C.L.G.**, 956 A.2d at 1007 (citing **In re Z.S.W.**, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

After a careful review of the record, this Court finds the trial court's decision to terminate the parental rights of Mother under section 2511(a)(2) and (b) is supported by competent, clear and convincing evidence in the record. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, finding no other issues of merit with regard to the termination Decrees, we affirm the trial court's termination Decrees on the basis of the trial court's reasoning, and grant Counsel's Motion for leave to withdraw.

Decrees affirmed. Motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/20/2019